UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-655(DSD/AJB)

Barbara Huberty,

       Plaintiff,

v.                                                                    **ORDER**

Washington County Housing &
Redevelopment Authority,

       Defendant.


       Laura K. Jelinek, Esq., Southern Minnesota Regional Legal Services, 166 East Fourth Street, Suite 200, St. Paul, MN 55101, counsel for plaintiff.

       Amanda R. Cefalu, Esq., Kathleen M. Brennan, Esq. and McGrann, Shea, Anderson, Carnival, Straughn & Lamb, 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402, counsel for defendant.


       This matter is before the court upon plaintiff's motion for partial summary judgment and defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiff's motion and grants defendant's motion.


**BACKGROUND**

       Plaintiff Barbara Huberty claims that defendant Washington County Housing and Redevelopment Authority ("HRA") failed to accommodate her mental disability in violation of the

Rehabilitation Act of 1973, the Fair Housing Amendments Act of 1988 ("FHAA") and the Minnesota Human Rights Act ("MHRA"), leading to the termination of her federally-funded housing benefits.  HRA, as the local "public housing agency" in Washington County, Minnesota, administers benefits under section eight of the United States Housing Act, 42 U.S.C. § 1437f.  These benefits are distributed in the form of a voucher, commonly referred to as a "Section 8 voucher," which the recipient uses to pay rent.

Plaintiff began receiving Section 8 benefits in July 1997 and, upon moving into Washington County, transferred those benefits to HRA's jurisdiction in May 1998.  HRA requires plaintiff and other Section 8 recipients to "re-certify" their eligibility to receive benefits at least once per year.  HRA also requires recipients to comply with a list of "family obligations."  Those obligations include supplying all information relevant to eligibility, attending appointments and completing needed forms.  Plaintiff successfully completed the re-certification process each year from 1998 to 2002.

Plaintiff's re-certification next came due on May 1, 2003. HRA sent plaintiff a letter on January 6, 2003, advising her of a re-certification appointment on February 4 and enclosing necessary forms.  The letter told plaintiff that she should telephone HRA if she could not appear at the designated place and time and warned her that failure to attend could lead to the termination of her

benefits.  (Huberty Dep. Ex. 3.)  Plaintiff failed to appear for
the appointment.

On February 4, 2003, HRA sent plaintiff a "second and final"
notification letter setting a new appointment for February 12,
2003.  (Huberty Dep. Ex. 4.)  The letter warned plaintiff that
"FAILURE TO ATTEND A RE-EXAMINATION APPOINTMENT, AS REQUIRED BY
SECTION 8 PROGRAM REGULATIONS, WILL RESULT IN TERMINATION OF
ASSISTANCE."  Plaintiff failed to attend the February 12
appointment.

HRA then mailed plaintiff two copies of a letter, one by
regular and one by certified mail, explaining that it was
terminating her Section 8 benefits effective March 31, 2003,
because of her failure to cooperate with the re-certification
process.  Plaintiff responded by telephoning HRA housing specialist
Ann Hoechst.  Plaintiff explained that she had failed to attend her
scheduled appointments because she was caring for a sick friend.
At Hoechst's request, plaintiff provided a letter from the friend.

HRA credited plaintiff's explanation and cancelled the
termination of her benefits.  HRA scheduled, and plaintiff
attended, a re-certification meeting with Hoechst on February 28,
2003.  Hoechst noted that plaintiff dressed appropriately and
brought with her the completed re-certification forms.  (Hoeschst
Aff. ¶ 7.)  On the forms, plaintiff made several disclosures
regarding disability.  Plaintiff stated that no member of the

household received or expected to receive Social Security benefits, that no member of the household qualified as disabled under FHAA or the Americans with Disabilities Act and that she did not receive financial assistance because of a disability. (Huberty Dep. Ex. 7.) Hoechst went over the forms with plaintiff and plaintiff appeared to follow the conversation. Hoechst explained what information was still needed to complete the re-certification, and plaintiff promised to provide it.

By March 18, 2003, Hoechst had not received the information plaintiff promised to provide. Hoechst wrote to plaintiff requesting that certain documents be submitted by no later than March 28. (Huberty Dep. Ex. 8.) The letter again warned plaintiff that failure to provide the information could result in termination of benefits. March 28 came and went, and plaintiff did not provide the documentation.

Hoechst again wrote to plaintiff on April 11, 2003, requesting the same documentation sought in the March 18 letter. (Huberty Dep. Ex. 9.) The letter set a new deadline of April 18 and contained the familiar warning regarding termination of benefits. Plaintiff did not comply.

On April 22, 2003, Hoechst wrote plaintiff to inform her that her benefits were being terminated because of her failure to provide the information necessary for re-certification. (Huberty Dep. Ex. 10.) Plaintiff replied on April 26 via handwritten letter

4

and requested an informal hearing to review the termination. (Huberty Dep. Ex. 12.)

HRA scheduled plaintiff's hearing for May 8, 2003. Plaintiff telephoned HRA on the morning of May 8 to reschedule. HRA acquiesced and rescheduled the informal hearing for May 19, 2003. Plaintiff attended the hearing on May 19 and brought some documentation. Plaintiff told the hearing officer that she did not open her mail because it was depressing to open it. (Huberty Dep. at 47.) Plaintiff also produced a pile of unopened mail. Plaintiff, however, did not say that she suffered from depression or any other mental condition, that she was disabled or that she needed any accommodations. The hearing officer issued a written decision upholding the termination of plaintiff's benefits because plaintiff "was given more than the standard number of opportunities to comply with HRA requirements and failed to do so." (Huberty Dep. Ex. 16 at 3.)

Plaintiff did not appeal the informal hearing decision. Instead, plaintiff's counsel wrote the hearing officer and asserted, for the first time, that plaintiff suffered from depression and adult attention deficit disorder. Counsel further asserted that those conditions prevented plaintiff from opening her mail and seasonably responding to requests for information. Counsel requested that HRA grant plaintiff the "reasonable accommodation" of reconsidering its termination of plaintiff's

benefits and allowing plaintiff time "to complete her mental health treatment plan to see if the timely response to written requests by the HRA can be achieved." (Huberty Dep. Ex. 17.) Counsel did not specify the contents of this plan or how long it would take to complete. A letter provided by plaintiff's treating psychologist confirmed plaintiff's diagnosis and indicated that plaintiff had agreed to undergo therapy and take medication "to develop healthier and more adaptive coping strategies." (Huberty Dep. Ex. 19 at 1.) HRA declined to reconsider its decision, and plaintiff requested a second informal due process hearing. The hearing was held, and the denial of plaintiff's requested accommodation was upheld.

Plaintiff did not appeal the result of the second hearing. Instead, she commenced this lawsuit claiming that HRA failed to reasonably accommodate her disability in violation of state and federal law. HRA now moves for summary judgment, and plaintiff moves for partial summary judgment.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23. Judgment may be rendered with respect to all or any part of a particular claim. See Fed. R. Civ. P. 56(b).

## II.  Collateral Estoppel

At the outset, HRA argues that collateral estoppel bars relitigation of certain issues decided by the informal hearing

officer.  Collateral estoppel, however, is trumped by the Supremacy Clause when its application is inconsistent with congressional intent regarding the appropriate mechanism for the enforcement of a certain federal right.  See Iowa Network Servs., Inc. v. Qwest Corp., 363 F.3d 683, 690 (8th Cir. 2004) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) (state administrative determination given no collateral estoppel effect in ADEA case)).  In FHAA, Congress created a comprehensive scheme for concurrent administrative and judicial jurisdiction over private claims brought under the Act.  See 42 U.S.C. §§ 3610 & 3613; H.R. Rep. No. 100-711, at 39 (1988), reprinted in 1998 U.S.C.C.A.N. 2173, 2200.  As part of that scheme, Congress set forth procedures by which the Secretary of Housing and Urban Development is to certify state agencies competent to adjudicate FHAA claims.  See 42 U.S.C. § 3610(f).  The Secretary has not certified HRA as such an agency.  Thus, in light of Congress' detailed private enforcement scheme and HRA's lack of a place within it, the court has grave doubts regarding the propriety of giving preclusive effect to HRA's informal proceedings.  Accordingly, the court declines to apply collateral estoppel.

**III. Failure to Accommodate**

Plaintiff's claims under the FHAA, Rehabilitation Act and MHRA are largely identical.  Among other elements,[1] plaintiff must show under each of her theories that the accommodation she requested of HRA was reasonable.  See Peebles v. Potter, 354 F.3d 761, 767-68 (8th Cir. 2004) (Rehabilitation Act); Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003) (MHRA); Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002) (FHAA); see also Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004) (Rehabilitation Act jurisprudence guides interpretation of MHRA).

All three analyses follow a burden-shifting approach.  First, plaintiff must make a prima facie showing that her requested accommodation is (1) linked to her disability-related needs, (2) necessary to afford her an equal opportunity to enjoy Section 8 benefits and (3) possible to implement.  See Peebles, 354 F.3d at 769 (plaintiff must show facially-reasonable accommodation including "causal connection between major life activity that is limited and the accommodation sought") (quoting Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687 (8th Cir. 2003)); Lapid-Laurel, 284 F.3d at 458-59 (must show accommodation "'necessary to afford [handicapped] persons [an] equal opportunity to use and enjoy a

---

[1]    The court declines to address these other elements as unnecessary to dispose of the present motions.

dwelling'") (alterations in original) (quoting 42 U.S.C. § 3604(f)(3)(B)). If plaintiff makes such a showing, the burden shifts to HRA to demonstrate that the requested accommodation is unreasonable. See Peebles, 354 F.3d at 768; Lapid-Laurel, 284 F.3d at 459.

Plaintiff has made the necessary prima facie showing regarding her requested accommodation. Plaintiff asked HRA to "reconsider[] its previous decision to terminate [plaintiff's] assistance and allow her time to complete her mental health treatment plan to see if the timely response to written requests by the HRA can be achieved." (Huberty Dep. Ex. 17 at 1.) Plaintiff's requested accommodation was possible, as there was no insurmountable obstacle to HRA's reconsideration of its decision to terminate plaintiff's benefits. Although HRA suggested to plaintiff that her voucher may already have been reassigned to another applicant, there is no evidence that such a reassignment actually took place. The accommodation is also linked to plaintiff's alleged disability because the treatment she proposed to seek would ostensibly address her inability to respond to HRA information requests.

Finally, assuming plaintiff was in fact financially qualified for a Section 8 voucher, the accommodation was necessary to allow plaintiff an equal opportunity to receive benefits. HRA does not dispute that, without its financial assistance, plaintiff's eviction was inevitable. Thus, without the accommodation,

10

plaintiff would lose her opportunity to "use and enjoy" her dwelling. Moreover, because it is plaintiff's alleged disability that prevented her from responding to information requests with the same diligence as other non-disabled Section 8 recipients, the accommodation was necessary to place plaintiff on an equal footing with those recipients.

Thus, because plaintiff has made out a prima facie case of failure to accommodate, the burden shifts to HRA to show that plaintiff requested an unreasonable accommodation. In the FHAA context, a requested accommodation is unreasonable when it fundamentally alters the nature of the program or imposes undue financial or administrative burdens.[2] Giebeler v. M & B Assocs., 343 F.3d 1143, 1157 (9th Cir. 2003), cited in Peebles, 354 F.3d at 769; Lapid-Laurel, 284 F.3d at 462. Whether the accommodation is unreasonable is "'highly fact-specific, requiring a case-by-case determination.'" Lapid-Laurel, 284 F.3d at 462 (quoting Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1104 (3d Cir. 1996)).

The court should first examine the accommodation request to determine precisely what plaintiff was asking for under all the circumstances. The court must also consider whether it was likely that the requested accommodation would allow plaintiff to fulfill the essential requirements imposed on Section 8 recipients. Here,

---

[2]   Because the burden to show unreasonableness under the Rehabilitation Act or MHRA is no more onerous than that imposed under FHAA, the court need not engage in multiple analyses.

HRA contends that the accommodation request was too vague and indefinite to give it any reasonable expectation of plaintiff's timely compliance with information requests.   HRA argues that plaintiff's request was for an unlimited extension of time to pursue a speculative treatment outcome that might never permit plaintiff to fulfill her obligation to provide information.

Plaintiff disputes HRA's characterization, arguing that she did not request an indefinite extension of time.   Plaintiff contends that she did not need more time to comply with the re-certification because, by the time she requested accommodation, she had already submitted all the necessary information.   Plaintiff, however, offers no evidence that she ever submitted all the necessary documentation.   Instead, plaintiff points to documents and deposition testimony showing that Hoechst had calculated her subsidy for the month of May, the first month following the re-certification deadline.   Thus, plaintiff concludes, HRA must have had all the information it needed.

Hoechst, however, testified that she was forced to complete that calculation with incomplete information because the law required HRA to continue paying benefits until the outcome of the first informal hearing requested by plaintiff.   (Hoechst Aff. ¶ 12.)   Plaintiff does not challenge Hoechst's testimony, and

plaintiff's unsworn assertions of compliance are insufficient to create a genuine issue of material fact.  Therefore, plaintiff's argument is unpersuasive.

The court concludes that HRA's characterization of plaintiff's requested accommodation as indefinite is accurate.  Plaintiff's request failed to indicate how long it would be before plaintiff's proposed treatment would enable her to respond to HRA's outstanding and future requests for information.  Indeed, the request gave HRA no assurances that plaintiff would ever be able to respond to information requests in a timely fashion.  Even the words plaintiff chose to articulate her request indicated significant doubt regarding the outcome.  Plaintiff requested HRA to "allow her time to complete her mental health treatment plan *to see if the timely response* to written requests by the HRA *can be achieved.*"  (Huberty Dep. Ex. 17 at 1 (emphasis added).)  HRA's characterization of plaintiff's request as one for an indefinite or unlimited extension of time is therefore accurate.

Thus regarded, plaintiff's requested accommodation was unreasonable because it would work a fundamental alteration of the Section 8 program.  Section 8 is a need-based housing assistance program.  Persons seeking to participate bear the burden to demonstrate and document their financial need.  See 24 C.F.R. § 982.551. Plaintiff's requested accommodation would fundamentally alter this scheme by creating the very real potential that

plaintiff would never again be required to re-certify her financial need for housing assistance.   Put differently, the requested accommodation would require HRA to pay plaintiff's rent, regardless of financial need, for however long it takes until plaintiff becomes able to provide financial information.   The accommodation would effectively expand the class of persons eligible for Section 8 assistance to include not only the impecunious, but also those who, because of disability, are unable to organize and present financial data.   Therefore, plaintiff's accommodation would fundamentally alter the need-based character of Section 8.

Alternatively, if HRA were to continue to enforce financial eligibility criteria, plaintiff's requested accommodation would impose an undue administrative burden on HRA.   The requested accommodation has the effect of relieving plaintiff's burden to prove her financial need for an indefinite period of time.   To continue to enforce financial re-certification requirements, HRA would have to go out and investigate plaintiff's financial background to verify her financial eligibility.   This prospect poses a significant administrative burden for which no provision is made in the detailed scheme created by the Secretary of Housing and Urban Development.   See 24 C.F.R. § 982.551 (placing burden on participants).   Therefore, plaintiff's requested accommodation was unreasonable, and HRA was under no obligation to grant it.

**IV.    Failure to Engage in the Interactive Process**

Plaintiff suggests that, even if her request was unreasonable, HRA should be faulted for failing to engage in an interactive process with her to discover a possible reasonable accommodation. It is apparently an open question in this circuit, and a point of dispute between others, whether the FHAA imposes a requirement to engage in the interactive process. Compare Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996) (suggesting that FHAA imposes duty to engage in interactive process), with Lapid-Laurel, 284 F.3d at 455 (expressing general doubt whether duty exists and deciding that duty does not exist in particular circumstances given limitations regarding ex parte contacts with zoning board). Nevertheless, as a general matter of disability discrimination law, the Eighth Circuit has never imposed liability for failure to engage in the interactive process where the plaintiff has failed to show the existence of a reasonable accommodation. See Peebles, 354 F.3d at 769-70 (Rehabilitation Act claim) (citing Dropinski v. Douglas County, 298 F.3d 704, 710 (8th Cir. 2002) (ADA and Nebraska Fair Employment Practices Act claims)). In this case, the court has held that the only accommodation suggested by plaintiff is unreasonable. Therefore, "'any discussion concerning the interactive process under these facts is superfluous.'" Id. at 769-70 (quoting Dropinski, 298 F.3d at 710). HRA is entitled to summary judgment.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's motion for partial summary judgment [Doc. No. 13] is denied.

2.   Defendant's motion for summary judgment [Doc. No. 23] is granted.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   June 28, 2005


                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court

16